UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**TODD PHENEGER,**

    **Plaintiff,**

                                                                                Civil Action 2:18-cv-1074

    v.                                                                      Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


## OPINION AND ORDER

Plaintiff, Todd Pheneger ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Response in Opposition (ECF No. 23), and the administrative record (ECF No. 10). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

                                           **I.      BACKGROUND**

Plaintiff protectively filed his application for Disability Insurance Benefits and for Supplemental Security Income on February 23, 2015. In his application for Disability Insurance Benefits, Plaintiff alleged a disability onset of June 1, 2011. After his application was denied initially and upon reconsideration, Plaintiff timely requested a hearing before an

administrative law judge. Administrative Law Judge Matthew Winfrey ("ALJ") held a hearing on September 26, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert John Finch (the "VE") and Medical Expert Dr. Jonathan Nusbaum, M.D. (the "ME") also appeared and testified at the hearing. On February 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act prior to June 21, 2017, but that he became disabled as of June 21, 2017, through the date of the decision. (R. at 19-33.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors (ECF No. 17), Plaintiff challenges the ALJ's evaluation the opinions of the ME, Dr. Nusbaum, and examining physician Dr. Mark Weaver, M.D. With regards to the ALJ's consideration of Dr. Nusbaum, Plaintiff points out that the ALJ's discussion of Dr. Nusbaum's opinion erroneously concludes that Dr. Nusbaum found that the evidence did not support any manipulative limitations when, in fact, Dr. Nusbaum opined that Plaintiff could only occasionally reach above shoulder level with his left extremity. Plaintiff maintains that the ALJ compounded this error because although he accorded Dr. Nusbaum's opinions "significant weight," the ALJ neither included the limitation Dr. Nusbaum opined relating to the use of Plaintiff's upper extremity in the residual functional capacity ("RFC") nor provided any explanation for his failure to do so. Plaintiff further argues that the ALJ failed to offer good reasons for his rejection of Dr. Nusbaum's opinion that Plaintiff could only stand or walk for one hour at a time. With regards to the ALJ's consideration of Dr. Weaver's opinions, Plaintiff asserts that "[i]t was error for the ALJ to reject Dr. Weaver's findings and opinions simply

because they were not as specific as the ALJ would have preferred." (Pl.'s Statement of Errors 21, ECF No. 17.) Plaintiff adds, "If Dr. Weaver's opinions were too vague either the State Agency . . . or the ALJ could have requested [Dr. Weaver] to clarify the extent of the limitations." (*Id*.) According to Plaintiff, the ALJ should have included some manipulative limitations in Plaintiff's RFC to account for Dr. Weaver's opinion that Plaintiff would "probably be limited in . . . handling objects." (*Id*. at 20 (quoting R. at 606).)

In her Memorandum in Opposition, the Commissioner asserts that any error the ALJ committed in his consideration of Dr. Nusbaum's opinions is harmless because the VE testified that the addition of at-issue limitations would not erode the available jobs identified. She further asserts that the ALJ reasonably discounted Dr. Weaver's opinion and that substantial evidence supports the ALJ's RFC determination.

## II. THE ADMINISTRATIVE DECISION

On February 21, 2018, the ALJ issued his decision. (R. at 19-33.) The ALJ first found that Plaintiff meets the insured status requirements through June 30, 2016. At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2011, the alleged onset date. The ALJ found that Plaintiff had the severe impairments of status post lumbar fusion, degenerative joint disease and posterior labrum tear of the left shoulder, status post skull fracture with subdural hematoma, seizures, encephalomalacia, status post right wrist surgery, bipolar disorder, intermittent explosive disorder, and neurocognitive disorder due to traumatic brain injury. (R. at 23.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24-25.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that since

---

[1]. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> June 1, 2011, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can stand and walk for up to four hours during a normal work day. He can occasionally balance, but can never climb ladders, ropes, or scaffolds, be exposed to workplaces hazards, such as unprotected heights or danger moving mechanical parts, and he can never operate a motor vehicle. The claimant can perform simple, routine, and repetitive tasks, but not at a production rate pace, such as no assembly line work, and with only occasional changes in the workplace. Additionally he can never interact with the public but he can occasionally interact with co-workers and supervisors, which would include being limited to jobs where the claimant's job responsibilities were performed without close teamwork, tandem work, or over-the-shoulder supervision.

(R. at 25.) In calculating Plaintiff's physical RFC, the ALJ relied upon the opinions of ME Dr. Nusbaum, according his opinion "significant weight" and concluding that his opinions were consistent with the overall records with the exception of Dr. Nusbaum's opinion that Plaintiff could only stand or walk for one hour at a time. (R. at 29-30.)

The ALJ concluded that Plaintiff has been unable to perform any of his past relevant work. The ALJ explained that prior to the June 1, 2011 onset date, Plaintiff was a "younger individual," but that on June 21, 2017, his age category changed to "an individual close approaching advanced age." (R. at 31.) Relying on the VE's testimony, the ALJ concluded that prior to June 21, 2017, Plaintiff could perform other jobs that exist in significant numbers in the economy. (R. at 31-32.) He therefore concluded that Plaintiff was not disabled under the Social Security Act for this time period. The ALJ further concluded that beginning on June 21, 2017, the day Plaintiff's age category changed, Plaintiff became disabled in accordance with Medical-Vocational Rule 201.14. (R. at 32.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

5

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff maintains that the ALJ erred in his consideration of two record opinions relating to his physical impairments. The Court finds these contentions of error to be unpersuasive.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). The regulations provide that where, as here, there is no opinion from a treating physician, the ALJ must explain the weight assigned to the opinions of the available medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. *See also* 20 C.F.R. § 404.1527(c) (identifying the same

factors for evaluating medical opinion evidence). However, an ALJ is not required to discuss each factor in 20 C.F.R. § 404.1527(c) when weighing the opinion evidence. *Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision); *see also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (holding that "[a]lthough the regulations instruct an ALJ to consider [the § 404.1527] factors," they do not require "an exhaustive factor-by-factor analysis"); *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

A.  **The ALJ's Consideration of Dr. Nusbaum's Opinions**

The Court finds any error in the ALJ's consideration and evaluation of ME Dr. Nusbaum's opinions to be harmless.

The ALJ accorded ME Dr. Nusbaum's opinions "significant weight," reasoning as follows:

> Significant weight . . . is given to the opinions of the impartial medical expert, Dr. Nusbaum. Dr. Nusbaum had the opportunity to review the record as a whole in order to obtain a longitudinal history of the claimant's impairments. As opposed to the State Agency findings, Dr. Nusbaum indicated that the claimant would be limited to sedentary work with additional postural and environmental limitations as adopted into the above residual functional capacity. Dr. Nusbaum also found that the evidence did not support any manipulative limitations or further environmental limitations. The undersigned finds that these opinions are consistent with the overall records. However, the undersigned did not adopt the portion of Dr. Nusbaum's opinion regarding the claimant being limited to standing and walking for one hour at a time for a total of four hours. While the undersigned did adopt the four-hour limit, the evidence does not support finding that the

8

> claimant can stand only one hour at a time. For example, the claimant testified that he is capable of performing chores, doing yard work, biking two to three miles and walking five to ten blocks without sitting down. Therefore Dr. Nusbaum's opinions are given significant rather than great, weight.

(R. at 29-30.)

Plaintiff correctly points out that the ALJ erred in stating that "Dr. Nusbaum also found that the evidence did not support any manipulative limitations," (R. at 29), given Dr. Nusbaum's opinion that Plaintiff "would be limited to occasional use of his left upper extremity above shoulder level," (R. at 81), a limitation the ALJ neglected, without explanation, to incorporate in Plaintiff's RFC. But as the Commissioner points out, upon cross-examination, the VE testified that number of available jobs and the representative examples offered would not change with the additional limitation "that the left upper extremity could only occasionally be used over shoulder level." (R. at 88.) Thus, the ALJ's failure to include or offer an explanation for declining to include this limitation is harmless such that reversal is not warranted. *See, e.g.*, *Wills v. Colvin*, No. 14-C-960, 2016 WL 1060254, at *9 (E.D. Wis. Mar. 15, 2016) (finding harmless error where limitations were omitted, but the representative jobs the VE identified were unskilled, explaining "[s]ince unskilled jobs are by definition 'simple, routine, and repetitive,' the omission from the hypothetical of these limitations is harmless" (citation omitted)); *Riley v. Comm'r of Soc. Sec.*, No. 3:11-cv-194, 2012 WL 553123, at *8 (S.D. Ohio Feb. 21, 2012) (ALJ's failure to include certain RFC limitations is harmless error where the claimant could still perform her past relevant work despite these limitations); *see also Kobetic v. Comm'r*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." (internal quotation marks and citation omitted)).

9

For this same reason, even if the Court assumes that the ALJ erred in rejecting Dr. Nusbaum's opinion that Plaintiff could only stand or walk for an hour at time, such error is harmless because upon cross-examination, the VE likewise testified that the addition of such a limitation would not change the number of available jobs and the representative examples he had identified. (*See* R. at 88 ("Q: If we go back to the first [hypothetical] . . . [a]nd if standing and walking . . . was . . . further limited to no more than one hour at a time, would that change your answers at all? A: No.").)

For these reasons, Plaintiff's first contention of error is **OVERRULED**.

## B. The ALJ's Consideration of Dr. Weavers' Opinions

Within this contention of error, the ALJ faults the ALJ for not incorporating manipulative limitations into Plaintiff's RFC to account for Dr. Weaver's opinion that Plaintiff would "probably be limited in . . . handling objects." (Pl.'s Statement of Errors at 20 (quoting R. at 606.).) The ALJ offered the following discussion of Dr. Weaver's opinions:

> The undersigned gives little weight to the opinions of physical consultative examiner, Mark Weaver, M.D. Although Dr. Weaver examined the claimant, his description of the claimant's limitations is vague and he has not provided a function-by-function analysis. Further Dr. Weaver indicates that claimant would "probably be limited" in certain areas of performance, but no further description is provided. As such, the undersigned assigns little weight to this opinion and, instead, relies on the above-described objective evidence in formulating the above residual functional capacity.

(R. at 30 (internal citations to the record omitted).) As relevant to this contention of error, the ALJ offered the following discussion relating to Plaintiff's right wrist injury:

> The records document the claimant's right wrist injury suffered from a fall in November 2016. Imaging revealed a fracture and, given that the claimant had complained of moderate to severe pain with numbness and tingling prior to this incident, a carpal tunnel release was performed at the same time as an open reduction and internal fixation. During a follow-up appointment in January 2017,

> the claimant reported that he had improved and his pain was much better. Though he still had some stiffness, he exhibited a full range of motion of his wrist and fingers, intact sensation, normal pulses, and he denied any issues. Though the claimant reported that he was still having wrist pain in February 2017, it was noted that the claimant had never gone to occupational therapy as prescribed.
>
> The undersigned has considered the claimant's shoulder and wrist impairments in assessing the claimant's above residual functional capacity. As a result, the undersigned has limited the claimant to sedentary work with the additional postural limitation of never climbing ladders, ropes, or scaffolds. The undersigned further notes that the evidence of each impairment does not provide support for providing further manipulative restrictions as the claimant's range of motion and fine motor skills are not a limited as alleged.

(R. at 27-28 (internal citations to the record omitted).) In addition, as set forth above, the ALJ accorded "significant weight" to the opinion of ME Dr. Nusbaum, who likewise considered Plaintiff's testimony relating to limitations from his right wrist injury, Plaintiff's treatment for his injury, and Dr. Weaver's opinion and specifically decided to "not place any manipulative limitations." (R. at 80-81.)

The Court finds that the ALJ did not err in declining to incorporate a manipulative limitation in Plaintiff's RFC based upon Dr. Weaver's opinion that Plaintiff would "probably be limited in . . . handling objects." *See Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 328960, at *10 (S.D. Ohio Jan. 9, 2018) (ALJ did not error in rejecting limitations "couched in probabilistic terms like 'would probably'"); *Jones v. Comm'r of Soc. Sec.*, No. 2:17-cv-233, 2017 WL 5476358, at *7 (S.D. Ohio Nov. 17, 2015) (ALJ did not error in rejecting opinions as "vague and equivocal" where doctor "did not offer specific vocational restrictions" and opined that the claimant "would probably be restricted" in certain activities).

Plaintiff's apparent contention that the ALJ erred in failing to request Dr. Weaver to clarify his opinions is unavailing. As the Commissioner points out, the regulations state that

recontacting a medical source is discretionary. *See* 20 C.F.R. § 404.1520b(b)(1)(i) ("We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source . . . ."); *see also Jones*, 2017 WL 5476358, at *7 ("Because the ALJ had discretion to determine whether additional evidence was necessary to render a decision, she did not err in failing to seek clarification of Dr. Weaver's opinion."); *Tracey v. Comm'r of Soc. Sec.*, No. 2:14-cv-1379, 2015 WL 4748009, at *11 (S.D. Ohio Aug, 12, 2015) (finding that "Plaintiff's contention that the ALJ had a duty to seek clarification" of a physician's opinion "is unavailing" because the ALJ only has a heightened duty to develop the record in limited circumstances).

Equally unavailing is Plaintiff's assertion that the ALJ erred in identifying Plaintiff's "status post right wrist surgery" as a severe impairment without imposing some limitation in his RFC to accommodate this impairment. (*See* Pl.'s Statement of Errors 21, ECF No. 17.) As discussed above, the ALJ offered a discussion relating to Plaintiff's wrist injury and treatment related to this injury and explicitly stated that as a result of his wrist impairment, he "limited [Plaintiff] to sedentary work with the additional postural limitation of never climbing ladders, ropes, or scaffolds." (R. at 27.) As the Commissioner points out, sedentary work, as defined in the Commissioner's regulations, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *See* 20 C.F.R. §404.1567(a). Thus, contrary to Plaintiff's assertion, the ALJ did, in fact, impose RFC limitations to accommodate Plaintiff's impairment of status post right wrist surgery.

Finally and most significantly, the ALJ identified substantial evidence in support of his determination that Plaintiff did not require the inclusion of specific manipulative limitations, including Plaintiff's treatment records, Plaintiff's failure to attend the occupational therapy as

prescribed, and the opinion of Dr. Nusbaum, who had reviewed the entire record, including Dr. Weaver's examination report and opinion.

For all of these reasons, Plaintiff's second contention of error is **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits prior to June 21, 2017. Accordingly, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

      /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE